UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC MYCOO,

                Petitioner,

     v.

WARDEN OF THE BATAVIA
FEDERAL DETENTION FACILITY,

                Respondent.
_____

**DECISION AND ORDER**

6:20-CV-06405 EAW

## INTRODUCTION

Represented by counsel, petitioner Eric Mycoo ("Petitioner"), an immigration detainee currently confined at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner asks the Court to determine that his ongoing detention is unconstitutional "because [he] has not been afforded the minimum of due process protections necessary under the Fifth and Eighth Amendments of the United States Constitution." (*Id.* at ¶ 3). In the alternative, he asks the Court to "order [his] release within 30 days unless the Respondent[] schedule[s] a hearing before an immigration judge where[] he would be able to present witnesses and evidence on his own behalf and be represented by counsel." (*Id.* at ¶ 4).

For the reasons that follow, the Court finds that Petitioner is not entitled to immediate release, but that he is entitled to both a hearing to determine whether he is subject to mandatory detention under 8 U.S.C. § 1226(c) and an individualized bond

hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community.

## BACKGROUND

Petitioner is a native and citizen of Jamaica. (Dkt. 11-1 at ¶ 5). Petitioner was admitted to the United States on or about November 5, 1991, as a lawful permanent resident. (*Id.*).

On or about October 2, 1994, Petitioner was arrested in Poughkeepsie, New York and charged with Criminal Trespass in the 3rd Degree. (*Id.* at ¶ 6). He pled guilty as charged in Poughkeepsie City Court on October 5, 1994, and was sentenced to time served. (*Id.*).

Petitioner filed an Application for Naturalization (Form N-400) with the former United States Immigration and Naturalization Service ("INS") on June 12, 1997. (*Id.* at ¶ 7).

On or about January 17, 2000, Petitioner was arrested in New York City and charged with Robbery in the 1st Degree: Forcible Theft—Armed with a Deadly Weapon. (*Id.* at ¶ 8). Petitioner pled guilty to Attempted Robbery in the 3rd Degree in New York State Supreme Court on May 1, 2000. (*Id.*). On July 6, 2000, Petitioner was sentenced to five years of probation. (*Id.*).

INS denied Petitioner's N-400 Application for Naturalization on February 4, 2000, for lack of moral character. (*Id.* at ¶ 9).

Petitioner was arrested in New York City on or about November 30, 2006, and charged with Reckless Endangerment in the 1st Degree and Menacing in the 2nd Degree:

Weapon.  (*Id*. at ¶ 10).  On May 10, 2007, Petitioner pled guilty in Queens County Criminal Court to Obstructing Governmental Administration in the 2nd Degree.  (*Id*.).  Petitioner was granted a conditional discharge and an order of protection was imposed for a five-year period.

Petitioner was arrested in New York City on or about April 15, 2011, and charged with Menacing in the 2nd Degree: Weapon, Criminal Possession of a Weapon in the 4th Degree: Firearm/Weapon, and Criminal Possession of Marijuana in the 4th Degree.  (*Id*. at ¶ 11).  On June 23, 2011, Petitioner pled guilty to Menacing in the 2nd Degree: Weapon, in Queens County Criminal Court and was granted a conditional discharge, with an order of protection entered for a one-year period.  (*Id*.).

On or about April 18, 2015, Petitioner was arrested by the New York State Police and charged with Driving While Intoxicated—1st Offense and Operating a Motor Vehicle with .08 of 1% Alcohol or More in Blood—1st Offense.  (*Id*. at ¶ 12).  Petitioner pled guilty to Operating a Motor Vehicle with .08 of 1% Alcohol or More in Blood—1st Offense in Nassau County District Court on May 2, 2017, and was "sentenced to 20 days confinement, granted a conditional discharge, fined $500 and his driver's license was revoked."  (*Id*.).

On or about July 3, 2016, Petitioner was arrested in New York City and charged with Driving While Intoxicated: Previous Conviction of Designated Offense within 10 Years and Unlawful Possession of Marijuana.  (*Id*. at ¶ 13).  He pled guilty to Driving While Ability Impaired by the Consumption of Alcohol in Queens County Criminal Court on March 21, 2017, and was "granted a conditional discharge, placed in an Alcohol Abuse Program, his driver's license was suspended for 90 days, and he was fined $300."  (*Id*.).

On or about May 17, 2017, the Immigration and Customs Enforcement Long Island Criminal Alien Program identified Petitioner as an alien amenable to removal. (*Id*. at ¶ 14). The Department of Homeland Security's ("DHS") Enforcement and Removal Operations Fugitive Operation Unit arrested Petitioner outside his residence in Far Rockaway, New York, on January 17, 2019. (*Id*. at ¶ 15). Petitioner was placed in immigration removal proceedings that same day and served with a Notice to Appear charging him as being subject to removal pursuant to § 237(a)(2)(A)(ii) of the Immigration and Nationality Act (the "INA") as a nonimmigrant who, at any time, after admission, has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (*Id*. at ¶ 16).

Upon taking Petitioner into custody on January 17, 2019, DHS performed a custody determination and determined that Petitioner was a criminal alien subject to mandatory detention under INA § 236(c), codified at 8 U.S.C. § 1226(c). (*Id*. at ¶ 17). Petitioner requested that an immigration judge ("IJ") review the custody determination. (*Id*.). Petitioner appeared *pro se* before an IJ for a master calendar and bond hearing on January 28, 2019, and the hearings were adjourned until February 6, 2019. (*Id*. at ¶ 18).

Petitioner appeared with counsel before an IJ on February 6, 2019. (*Id*. at ¶ 19). The master calendar hearing was adjourned until February 22, 2019, to allow for attorney preparation, and no action was taken with respect to bond. (*Id*.). Petitioner appeared with counsel at the master calendar hearing on February 22, 2019, and the IJ determined that Petitioner was removable based on his convictions for Menacing in the 2nd Degree and Attempted Robbery in the 3rd Degree. (*Id*.). The proceedings were continued to April 8,

- 4 -

2019, for an individual calendar hearing to consider Petitioner's application for cancellation of removal. (*Id*.).

Petitioner appeared with counsel on April 8, 2019, for an individual calendar hearing on the merits. (*Id*. at ¶ 21). The IJ heard testimony, denied Petitioner's application for cancellation of removal, and ordered him removed to Jamaica. (*Id*.).

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on April 22, 2019. (*Id*. at ¶ 22). The BIA dismissed Petitioner's appeal and affirmed the IJ's determination by decision dated August 23, 2019. (*Id*. at ¶ 23).

On September 18, 2019, Petitioner filed a Petition for Review in the United States Court of Appeals for the Second Circuit. (*Id*. at ¶ 25). Petitioner filed a motion for a stay of removal on September 29, 2019, thereby temporarily preventing DHS from removing him to Jamaica based on a forbearance agreement between DHS and the Second Circuit. (*Id*.).

Petitioner commenced the instant action on November 7, 2019, by filing in the United States District Court for the District of New Jersey. (Dkt. 1).

On or about March 20, 2020, Petitioner's counsel submitted a request for release to DHS. (Dkt. 11-1 at ¶ 28). DHS denied the request on April 13, 2020, "after Petitioner's attorney failed to establish to DHS's satisfaction that Petitioner is not a flight risk and that he is no longer a danger to the community." (*Id*.).

On March 30, 2020, the parties filed with the Second Circuit a joint stipulation and request for remand to the BIA to reconsider where Petitioner is removable as charged as

having been convicted of two crimes involving moral turpitude in light of *Obeya v. Sessions*, 884 F.3d 442 (2d Cir. 2018). (Dkt. 11-1 at 27).

Petitioner's counsel submitted additional documentation in support of the request for release to DHS on or about May 6, 2020. (*Id*. at ¶ 30). DHS denied the request for release on May 14, 2020, "after finding that Petitioner's attorney failed demonstrated [sic] any significant changed circumstances which would alter DHS's previous determination that Petitioner is a flight risk and a danger to the community." (*Id*.).

On May 18, 2020, Petitioner moved to transfer his Petition to this District from the District of New Jersey. (Dkt. 4). The Hon. Claire C. Cecchi granted Petitioner's motion on June 12, 2020 (Dkt. 7), and the matter was transferred to this District on June 15, 2020 (Dkt. 8).

On June 30, 2020, DHS filed a motion asking the BIA to remand the matter to the IJ for further consideration. (Dkt. 17 at 10). Petitioner did not oppose DHS's motion. (*Id*.).

Pursuant to Order of the Court entered on June 18, 2020 (Dkt. 9), Respondent filed his opposition to the Petition on July 8, 2020 (Dkt. 11; Dkt. 12). Petitioner filed his reply on July 20, 2020. (Dkt. 17). As of that date, Petitioner's removal proceedings remained pending before the BIA. (*Id*. at 10).

## DISCUSSION

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S.

510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.     Statutory Basis for Petitioner's Detention

As an initial matter, the Court notes that there is a dispute in this matter as to the statutory basis for Petitioner's detention. As set forth above, when DHS took Petitioner into custody on January 17, 2019, it determined that Petitioner was a criminal alien subject to mandatory detention under 8 U.S.C. § 1226(c). (Dkt. 11-1 at ¶ 17). Where DHS determines that an alien is subject to mandatory detention under § 1226(c), the alien is informed of the decision and permitted to challenge it in a hearing pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). *See Demore*, 538 U.S. at 514 n.3 ("This '*Joseph* hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c). At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [DHS] is otherwise

substantially unlikely to establish that he is in fact subject to mandatory detention.") (internal citation omitted). An alien may appeal an adverse *Joseph* decision to the BIA.

In this case, Petitioner requested a *Joseph* hearing, but the parties disagree as to whether he ever received one. Respondent contends that he did, asserting that on February 6, 2019, the IJ "determined that Petitioner satisfied the requirements for detention under § 1226(c) and therefore took No Action because Petitioner was not eligible for bond." (Dkt. 12 at 14). However, Petitioner's counsel disputes this version of events. Petitioner's counsel, who was present at the hearing on February 6, 2019, contends that the IJ took "no action" at counsel's request because he was not prepared for the *Joseph* hearing and that this disposition "was explicitly *not* a denial" of Petitioner's request for bond." (Dkt. 13 at 24-25). According to Petitioner's counsel, "no *Joseph* hearing was properly held and the Petitioner was thus never given a fulsome opportunity to litigate the issue" of whether he was in fact subject to mandatory detention under § 1226(c).

The Court finds credible the assertion of Petitioner's counsel, who was personally present before the IJ on February 6, 2019, that no *Joseph* hearing was ever actually held in this matter. Petitioner's counsel's assertion is supported by the IJ's order—the IJ did not mark the spot on the form order indicating that the request for a change in custody status had been denied, but instead marked the line labeled "OTHER" and wrote in "No action." (Dkt. 11-2 at 15).

Respondent concedes that "aliens detained under § 1226(c) . . . are entitled to challenge their classification as a criminal alien subject to mandatory detention." (Dkt. 12 at 12 n.2). Further, the Court has habeas jurisdiction to order that an immigration detainee

be provided with a *Joseph* hearing.  *See, e.g., Pierre v. Sabol*, No. 1:CV-10-2634, 2011 WL 2470461, at *5 (M.D. Pa. May 20, 2011), *adopted*, 2011 WL 2516332 (M.D. Pa. June 20, 2011).[1]  The Court finds that Petitioner is entitled to a *Joseph* hearing and orders that he be provided one within 14 days of entry of this Decision and Order.

## III.   Petitioner's Claims

Petitioner argues that even assuming that he is subject to mandatory detention under § 1226(c), his continued detention is unconstitutional.  For the reasons that follow, the Court denies Petitioner's request for immediate release, but finds that Petitioner has been deprived of procedural due process and is thus entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses either a risk of flight or a danger to the community.[2]

---

[1]  To the extent Petitioner is asking the Court to determine in the first instance whether his criminal convictions qualify him for detention under § 1226(c), it declines to do so.  *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 467 (D. Mass. 2010) (explaining that district courts lack jurisdiction to decide whether particular offenses are covered under § 1226(c) where such inquiry is intertwined with the determination of deportability).

[2]  Assuming that Petitioner is not actually subject to mandatory detention under § 1226(c), the statutory basis for his detention would be 8 U.S.C. § 1226(a).  This Court recently entered a Decision and Order certifying a class of "[a]ll individuals currently detained at the Buffalo Federal Detention Facility under § 1226(a) who will have a custody hearing before the Batavia or Buffalo Immigration Courts" and ordering Respondent to provide members of that class with "a bond hearing wherein the government bears the burden of proving by clear and convincing evidence that the individual is a danger to the community or flight risk, and where the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay." *Onosamba-Ohindo v. Barr*, No. 1:20-CV-00290 EAW, 2020 WL 5226495, at *23 (W.D.N.Y. Sept. 2, 2020).  In other words, if Petitioner prevails at his *Joseph* hearing, he would fall within the *Onosamba-Ohindo* class and be entitled to a bond hearing comporting with the same procedural safeguards the Court orders herein.

In prior decisions, this Court has set forth the history regarding the constitutionality of the mandatory detention provided for by § 1226(c), in the wake of the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), including the distinctions between substantive and procedural due process challenges, and it will not repeat that discussion here. *See, e.g., Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 793-94 (W.D.N.Y. 2019). Rather, the Court will turn directly to Petitioner's due process challenges.

### A.     Entitlement to Relief under *Jones v. Wolf*

Petitioner argues that he is entitled to immediate release pursuant to *Jones v. Wolf*, No. 20-cv-361 LJV, 2020 WL 1643857 (W.D.N.Y. Apr. 2, 2020). In *Jones*, the Hon. Lawrence J. Vilardo held, in the context of the ongoing global COVID-19 pandemic, that the substantive due process rights of certain petitioners who had "COVID-19 vulnerabilities identified by the CDC [Centers for Disease Control]" were being violated at the BFDF because those petitioners were not being permitted to engage in appropriate social distancing. *Id*. at *12.

Petitioner has not established that he is entitled to release under the reasoning set forth in *Jones*. As an initial matter, Petitioner has not established that he has a condition that increases his vulnerability to COVID-19. Petitioner contends that he has "major depressive disorder . . . with psychotic behavior," and speculates that his psychosis may be related to an underlying neurological condition. (Dkt. 17 at 24). Petitioner has provided no support whatsoever for this speculation, apart from a general reference stating that "[p]sychosis arises with considerable frequency in a number of neurologic conditions." (*Id*. (citation omitted)). Absent some medical evidence that his psychosis is tied to a

neurological condition, Petitioner has not borne the burden of demonstrating that he is particularly vulnerable to COVID-19.

Further, Petitioner has presented no evidence whatsoever regarding his ability to engage in social distancing or otherwise take precautions against COVID-19 inside the BFDF.  In *Jones*, Judge Vilardo expressly held that any constitutional violation could be remedied by "providing those petitioners who meet the CDC's definition of vulnerable individuals with a living situation that facilitates 'social distancing.'"  2020 WL 1643857, at *14.  Petitioner has failed to address this aspect of the *Jones* decision and has thus not established that he is entitled to immediate release based on the COVID-19 pandemic and the claimed violation of his substantive due process rights.

### B.    Procedural Due Process

For the reasons previously articulated in other decisions by this Court, *see, e.g., Ranchinskiy*, 422 F. Supp. 3d at 797; *Constant v. Barr*, 409 F. Supp. 3d 159, 167-68 (W.D.N.Y. 2019), this Court agrees with the overwhelming majority of courts in this Circuit that the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), and other courts within this Circuit, is a useful tool for addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context.  Those factors are as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral v. Decker*, 331 F. Supp. 3d 255, 261.  However, these factors cannot be applied in a rigid fashion, and each individual's detention circumstance must be evaluated on a case-by-case basis to determine whether it has become unreasonable or unjustified, consistent with the flexible nature of due process.  *Jennings*, 138 S. Ct. at 852. The case-by-case approach is an "as-applied, fact-based analysis [.]"  *Sajous*, 2018 WL 2357266, at *10.[3]

As to the first factor, Petitioner has been detained in immigration custody since January 2019, or for approximately 20 months.  (*See* Dkt. 4 at 81).  Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition."  *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted).  "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10,

---

[3]  Respondent contends that DHS's review of Petitioner's post-removal order requests for release satisfies the requirements of due process. (Dkt. 12 at 14).  The Court disagrees.  Such review falls far short of the protections afforded at a bond hearing and does not constitute procedural due process.  *See, e.g.*, *Leslie v. Attorney General*, 678 F.3d 265, 267 (3d Cir. 2017); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 952 (9th Cir. 2008).

2019) (collecting cases), *appeal dismissed*, No. 19-2848, 2020 WL 1126526 (2d Cir. Jan. 9, 2020).

As to the second factor, Respondent concedes that Petitioner is not at fault for the length of his removal proceedings. (*See* Dkt. 12 at 15). Moreover, Petitioner's "pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). This factor thus favors Plaintiff.

As for the third factor, Petitioner has asserted a defense to removal in his immigration proceedings. Specifically, Petitioner contends that he does not have two criminal convictions involving moral turpitude. "The Court need not inquire into the strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11; *see Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal "including asylum . . . and relief under the Convention Against Torture"); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable."). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor also weighs in favor of Petitioner. Petitioner has been confined for a total of 25 days as a result of his criminal convictions. This is far exceeded by his current 20-month detention.

The fifth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral. This Court has previously found that because BFDF "houses individuals against their will with various restrictions on their freedom of movement . . . while perhaps not akin to a maximum-security prison, for many individuals . . . the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention." *Singh v. Barr*, No. 1:19-CV-01096 EAW, 2020 WL 1064848, at *10 (W.D.N.Y. Mar. 2, 2020).

The sixth factor, the nature of the crime Petitioner was convicted of, weighs in favor of Petitioner. Petitioner's criminal convictions are relatively minor and he has never been sentenced to a significant period of incarceration for any of them.

The final factor, whether Petitioner's detention is near conclusion, also favors Petitioner. It appears likely that this matter will be remanded, at the government's request, to the IJ by the BIA—in other words, as Petitioner contends, he is essentially "back to 'square one'" (Dkt. 17 at 20) in terms of the progress of his removal proceedings.

Because most if not all of the factors favor Petitioner, the Court finds that Petitioner's continued detention without a bond hearing is constitutionally unjustified.[4] *See*

---

[4] Having determined that Petitioner is entitled to a bond hearing, the Court need not reach his alternative argument that his "ongoing prolonged detention without a bond hearing violates the Eighth Amendment." (Dkt. 1 at 12).

*Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).

### C.     Process Due to Petitioner

It is well established within this Circuit that when a court determines the length of a petitioner's detention pursuant to § 1226(c) is unjustified, due process requires that he be given a bond hearing where an individualized determination can be made as to whether he should remain confined for the duration of his immigration proceedings. *See, e.g.*, *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *14 (S.D.N.Y. Dec. 27, 2018) (holding petitioner was entitled to a bond hearing after finding his detention was unreasonably prolonged); *Cabral*, 331 F. Supp. 3d at 262-63 (same); *Hernandez*, 2018 WL 3579108, at *10 (same). "The only remaining question concerns the burden of proof at the bond hearing." *Bermudez Paiz*, 2018 WL 6928794, at *15.

Prior to *Jennings*, the Second Circuit required in bond hearings that "the government establish[ ] by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015). In *Jennings*, the Supreme Court held "that § 1226 itself does not require the government to carry the clear and convincing evidence burden. . . . However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c)." *Cabral*, 331 F. Supp. 3d at 262 n.6 (citing *Jennings*, 138 S. Ct. at 847, 851). The vast majority of courts in this Circuit to have considered this issue, including this Court, have

found that due process requires that an individual such as Petitioner is entitled to a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence. *See, e.g., Ranchinskiy*, 422 F. Supp. 3d at 800.

Additionally, as the Court has previously noted, both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018).

## **CONCLUSION**

For the foregoing reasons, the Petition (Dkt. 1) is granted to the extent that the Court orders Respondents to afford Petitioner a *Joseph* hearing and an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry. The Clerk of Court is instructed to close this case. If Petitioner requests a continuance that results in a *Joseph* hearing or bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondents are directed to file a status update with the Court within three (3) days of the date of Petitioner's bond hearing regarding the outcome of the hearing, or on or before October 29, 2020, whichever date is earlier. The Clerk of Court is instructed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   September 29, 2020
         Rochester, New York